Brent Dorian Brehm, SBN: 248983
E-mail: bbrehm@kantorlaw.net
Peter S. Sessions, SBN: 193301
E-mail: psessions@kantorlaw.net
KANTOR & KANTOR, LLP
19839 Nordhoff Street
Northridge, CA 91324
Telephone: (818) 886-2525
Facsimile: (818) 350-6272

Attorneys for Plaintiff,
Par Hegardt

**UNITED STATES DISTRICT COURT**

**SOUTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| PAR HEGARDT,<br><br>Plaintiff,<br><br>v.<br><br>METROPOLITAN LIFE INSURANCE COMPANY<br><br>Defendants. | Case No. 3:23-cv-02008-LL-BJC<br><br>**DECLARATION OF PAR HEGARDT**<br>**Filed in support of Plaintiff's Opposition to Defendant's Opening Trial Brief** |

I, Par Hegardt, hereby declare as follows:

1. I am the named plaintiff in the above entitled action and I have personal knowledge of the facts stated herein. If called to testify, I would and could testify competently thereto.

2. Based on my years of working as a commercial pilot, I have personal knowledge that all commercial pilots must see an Aviation Medical Examiner ("AME") every six months to a year (depending on age). The AME examines the pilot, and performs applicable tests/diagnostics, before evaluating if the pilot is medically clear to fly under the FAA's requirements. If the AME deems the pilot not

medically clear to fly, or determines further testing/diagnostics are needed, the AME will consult with the FAA to determine what needs to be done for the pilot to be considered medically able to fly. The AME will transmit this to the pilot and work with them to satisfy the FAAs requirements.

3. The AME examines, tests, and evaluates the pilot. The AME is the only person authorized to determine if a pilot is medically clear to fly. The AME does not provide treatment. True to the moniker, they medically examine aviators.

4. Any healthcare professional with the appropriate training and experience in the field of medicine involved in the medical judgment of whether a commercial pilot is medically clear to fly will know this.

5. Currently, Dr. Eric Shreder is my AME. He has been my AME for the past five or six years. Prior to that, I went to AMEs in different parts of the country.

6. As my AME, Dr. Shreder has examined me in person. He has performed tests on me. He has evaluated my treatment history. His assessment was that I am not medically clear to fly as a commercial pilot. Thus, he consulted with the FAA about what is necessary for me to return to working as a commercial pilot and is working with me to meet those requirements. This included informing me of medications that the FAA did not allow commercial pilots to take and alternative medications that could be used to treat my conditions when appropriate.

7. As Dr. Shreder explained in his letter, since I entered the HIMS program, I meet with him every quarter. The last time was a couple of weeks ago. He also explained that I undergo weekly aftercare, which is group therapy treatment with fellow pilots in the HIMS program. The aftercare therapist sends quarterly reports to Dr. Shreder. He then evaluates them (and me) and forwards his findings to the FAA.

8. Of course, all this is not free. I pay out-of-pocket for all the treatment and examinations. Doing so was made more difficult when MetLife terminated my

disability benefits that already provided a fraction of my income as a pilot. This increased my anxiety, and I am grateful that I was able to avoid a relapse.

9. I have not taken efforts to extend the period during which I am medically precluded from flying as a commercial pilot. I have followed the recommendations of Dr. Shreder and my treatment providers. I have even taken steps to explore alterations to my treatment to bring me closer to regaining my medical clearance to fly.

10. For example, during my treatment visit with Dr. John Knox, Jr. on April 14, 2023, I asked him when he felt I would be able to discontinue gabapentin. I informed Dr. Knox that one of the items needed for me to be able to return to flying was being off gabapentin, and thus I was interested in finding an effective alternative. It was Dr. Knox's decision to continue treating me with gabapentin. I raised this with Dr. Knox again on May 9, 2023. Again, it was Dr. Knox's decision to continue treating me with gabapentin. I did not beg Dr. Knox to continue treating me with gabapentin or anything of the sort.

11. Thereafter, when I discussed MetLife's termination of my LTD benefits with Dr. Shreder, he told me that, given my medical history, treatment with gabapentin was appropriate and there were no other suitable medications I could take for my anxiety that would allow me to start working as a pilot at that time.

12. I was devastated and furious when I read MetLife's assertions to a Court of Law that have no resemblance at all to the truth. False claims that I "essentially begged Dr. Knox to continue" gabapentin, or that I "manipulated the process to a degree by attempting to prolong his Gabapentin prescription in order to extend his receipt of LTD benefits," or that I took steps to "squash" a discussion with Dr. Knox about stopping gabapentin and that I had to "convince" him to continue prescribing it. I have been working hard to treat my illnesses, including alcohol use disorder and anxiety disorder. It has not been easy. But I have put my faith in my doctors and left treatment decisions to them.

begged Dr. Knox to continue" gabapentin, or that I "manipulated the process to a degree by attempting to prolong his Gabapentin prescription in order to extend his receipt of LTD benefits," or that I took steps to "squash" a discussion with Dr. Knox about stopping gabapentin and that I had to "convince" him to continue prescribing it. I have been working hard to treat my illnesses, including alcohol use disorder and anxiety disorder. It has not been easy. But I have put my faith in my doctors and left treatment decisions to them.

13. The implication made by MetLife that I am working to get disability benefits instead of working is flat out wrong. MetLife's counsel was informed on February 1, 2024, that I had been teaching part-time at a flight school since August 15, 2023. My work is in a flight simulator, not in the air, so I am able to do it without the medical clearance needed to fly. The simulator work is variable, has resulted in a reduction of income, and is not nearly as rewarding as flying. But it allows me to be productive while I continue working towards regaining my medical clearance.

I declare under penalty of perjury that the foregoing is true and correct.

Executed this 26th day of November, 2024, at 15:34 VISTA, California

Par Hegardt